UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF
AMERICA, Ex rel.
NICHOLAS OLSON,
  Plaintiff-Relator,

v.        Case No: 6:21-cv-01380-CEM-LHP

WINCHESTER INTERCONNECT HERMETICS, LLC,
WINCHESTER INTERCONNECT CORPORATION,
  Defendants.
_____/

**<u>AMENDED COMPLAINT FOR VIOLATIONS OF
FEDERAL FALSE CLAIMS ACT (FCA)
DEMAND FOR JURY TRIAL</u>**

On behalf of the United States of America ("U.S."), Plaintiff Relator Nicholas

Olson, prior to responsive pleading, submits this Complaint against

Defendants, WINCHESTER INTERCONNECT HERMETICS, LLC ("WIH")

and WINCHESTER INTERCONNECT CORPORATION ('WIC"). This

Complaint is filed pursuant to F.R.C.P. Relator respectfully demands trial by

jury on all issues so triable, per F.RC.P. 38.

1. As required by FCA 31 U.S.C. § 3730(b)(2), the Relator has provided to

  the Attorney General of U.S., and the U.S. Attorney, Orlando, Florida,

before filing Complaint, material evidence and information in the Relator's possession. The disclosures support the existence of false claims by WINCHESTER INTERCONNECT HERMETICS, LLC.

## I.    SUMMARY

2.  This is a *qui tam* action to recover damages and civil penalties on behalf of U.S. arising from WINCHESTER INTERCONNECT HERMETICS, LLC'S misrepresentation and fraud it committed as a sub-contractor for Northrop Grumman and Lockheed Martin who performed under government contracts. WINCHESTER INTERCONNECT HERMETICS, LLC is a wholly owned subsidiary of WINCHESTER INTERCONNECT CORPORATION. Jointly, WINCHESTER INTERCONNECT HERMETICS, LLC and WINCHESTER INTERCONNECT CORPORATION shall be referenced as ("WINCHESTER").

3.  The products in question were produced solely by WINCHESTER, and thus, WIH is deemed as a single source manufacturer as defined by 10 U.S.C. § 2306.

4.  As a single source manufacturer, under the Truth in Negotiation Act, WIH was required to certify its cost to Northrop Grumman

and Lockheed Martin. WIH inflated its projected costs by over 350%.  When the true costs were ascertained, WIH withheld the true costs from the United States Government, from Northrop Grumman, and from Lockheed Martin. Each time a purchase order was made, WIH had to recertify its costs.

5. WINCHESTER realized and continued to realize profits for products exceeding 60%+ profit margin. However, during negotiations with the government, a profit margin of 12-15% was established.

6. To achieve a 60%+ margin, WINCHESTER falsified records, lied about the true costs of the products, and realized a 60%+ profit on its products when it was only permitted a 12-15% profit margin.

7. Northrop Grumman was a master contractor under one of the contracts which Plaintiff-Relator worked on.

8. Lockheed Martin was the master contractor of the second contract which Plaintiff-Relator worked on.

9. As a result of the costing lies and fraud perpetuated by WIH under the Northrup Grumman contract, the United States government was ripped off in a sum more than one million dollars.

10. As a result of the costing lies perpetuated by WIH under the Lockheed Martin contract, the United States government was ripped off in a sum in excess of one million dollars.

11. In amending the FCA in 1986, Congress emphasized that the scope of false or fraudulent claims should be broadly construed:

*(E)ach and every claim submitted under a contract... which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim. S. Rep. No. 99-345, at 9 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274.*

## II.    PARTIES

### A. Plaintiff-Relator

12. Plaintiff-Relator Nicholas Olson ("OLSON") or ("Relator") is a resident of Brevard County Florida.

13. OLSON worked for WINCHESTER (f/k/a SRI Hermetics) from April 29, 2015 through July 21, 2021 as an inside sales manager.

14. On June 30, 2021, OLSON resigned as a result of numerous illegal and unethical conduct perpetuated by WINCHESTER. At the time that OLSON resigned, he informed the highest level of management at

WINCHESTER of the unethical and illegal conduct which occurred at the local offices of WIH, located at 3950 Dow Rd, Melbourne, FL 32934.

### B. Defendants

15. WINCHESTER INTERCONNECT HERMETICS LLC ("WIH") is a corporation organized and existing under the laws of the state of Florida.

16. WINCHESTER INTERCONNECT CORPORATION ("WIC") is the parent company of Winchester Interconnect Hermetics, LLC, and is responsible for the acts and omissions of WINCHESTER INTERCONNECT HERMETICS, LLC. ("WIH").

17. Lockheed Martin and Northrop Grumman hired WIH as a sub-contract to deliver single source mission critical parts under two government contracts.

### III.   JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

18. This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. §3730(b) and 28 U.S.C. § 1331.

19. Subject matter jurisdiction is further supported because this action is not based upon the public disclosure of allegations or transactions

in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media. Relator is the "original source" of the allegations or transactions under the FCAs.

### B. Personal Jurisdiction

20. This Court has personal jurisdiction over the defendants under 31 U.S.C. § 3732(a), because they transact business in this judicial district, and the relevant parts of the contract, which was single sourced to WIH, occurred in Brevard County.

### C. Venue

21. Venue is proper in this district, pursuant to 31 U.S.C. 3732(a), because Defendants are licensed or transact business in this judicial district, and the unlawful acts of WINCHESTER were committed in Brevard County, Florida.

### IV.   BACKGROUND

22. WINCHESTER INTERCONNECT HERMETICS, LLC ("WIH) is a wholly owned subsidiary of WINCHESTER INTERCONNECT CORPORATION("WIC") which manufacturers mission critical products for defense companies who in turn provide services and

6

products to the Department of Defense.  WIH is a Florida company bought by WIC in 2014 (f/k/a as SRI Hermetics). The unique product line includes mission critical components, RF Connectors, OC Connectors, and assemblies which are installed in military vehicles and planes, including military assets such as the F35 fighter aircraft.

23. OLSON was an inside sales manager at WIH from April 29, 2015 – July 21, 2021. On June 30, 2021, Mr. Olson resigned due to the unethical practices of WIH.

24. Plaintiff, OLSON, has unique and previously undisclosed knowledge of the illegal and unethical activities perpetuated by WINCHESTER.   Specifically, OLSON has information and documents which show that WIH lied and misrepresented the costs related to the manufacturing of single source for certain product parts.

25. As a single source manufacturer, WIH is bound by the Truth in Negotiation Act, including 10 USC. 2306 which requires Defendants to provide truthful and accurate certification of what the costs are, so that the government and taxpayers do not get

ripped off. This permits the government to fairly negotiate a price when there is no competition for goods or product parts. For instance, under the Truth in Negotiation Act, WINCHESTER is impeded from charging an exorbitant price to the government for a unique part it manufactures which is needed for the safe operation of a billion-dollar aircraft.

26. WIH, as will be pled fully below, circumvented the law by fraudulently misrepresenting its "costs" to manufacture mission critical parts, so that it could, in effect, steal from the American people, monies which it did not deserve, and which were "earned" through fraudulent means.

27. Additionally, WIH engaged in the following unethical or illegal business practices which subjected the United States to contractual misfeasance. These include:

    a. Failing to meet contractual obligations such as failing to submit product change notices;

    b. Failure to follow IT security compliance protocols;

    c. Knowingly shipping defective products;

    d. Not flowing down and managing DPAS ratings correctly.

e.  Misclassification by WINCHESTER as a small business by mis-utilizing NAICS code 334417

f.  Inflating and misrepresenting reports during the sales of WINCHESTER products to Snow Phipps and APTIV and mentioned the existence of numerous other unethical practices.

g.  Purposefully delaying in providing cost information so that Northrop Grumman Corporation and Lockheed Martin Corporation would not have enough time to request cost verification or perform a cost audit. As way of example, see Exhibit A where WINCHESTER management states "We know what NGC wants, but it is in no way beneficial to us to give them everything they want. We will piece meal the information out and let the clock become our friend."

## V.   THE TRUTH IN NEGOTIATION ACT

### 10 U.S.C. § 2306

28. The Truth in Negotiations Act (TINA) is a contracting statute that has been put into place in order to protect the Department of Defense's funds by mandating that contractors provide certified cost or pricing data. When cost estimates exceed the TINA threshold

($700,000), and when all other means of negotiating fair and reasonable pricing are not available, such as in single-source procurement, TINA ensures that a fair and reasonable price can be determined from the contractor and sub-contractor submitted data.

29. Under § 2306(a)(3) of the Truth in Negotiation Act, a subcontract providing a single source product is required to submit and certify its pricing data, so that a fair negotiation takes place and so that the United States Government (and its taxpayers) don't get ripped off.

30. § 2306(d) demands that "*the fee for performing a cost-plus-a-fixed fee contract for experimental, developmental, or research may not be more than 15 percent of the contract, not including the fee…. The fee for performing any other cost-plus-a-fixed-fee contract may not be more that 10 percent of the estimated cost of the contract, not including the fee.*"

31. Under both the Northrup Grumman Master Contract and the Lockheed Martin Master Contract, WIH was a single source provider for the contracts, and as such, bound by a maximum margin of 10% of the costs to produce the single source. In the alternative, if the Court deems any of the subject contracts to be for experimental,

developmental or research work, then WINCHESTER would be permitted to mark-up the contract up to a 15% maximum margin.

32. In any event, as fully set forth below, the margins realized by WINCHESTER exceeded 60%.

## VI.   The Northrop Grumman Contract

33. Relator, as an inside sales manager for WIH knew of the Northrop Grumman Contracts as PN-151-008989-0002, Program APR-39, herein referenced as ("The Northrop Grumman Master Contract").

34. Relator was the inside sales manager as an employee of WIH who worked with Northrop Grumman Corporation in the pricing and procuring aspects of The Northrop Grumman Master Contract.

35. Moreover, the terms and conditions between Northrop Grumman and WIH made it clear that WINCHESTER was providing a fixed price contract and that it would be subject to numerous FAR & DFAR regulations, including §s 52.215-2 and 52.215-10 which concerns pricing data requirements (See Exhibit B, Terms and Conditions, § 6 & 40) and (Northrop Grumman letter Exhibit C, § 3, ground rules).

36. Furthermore, pursuant to FAR 15.403-4, *Requiring Certified Cost or Pricing Data (10 U.S.C. 2306a and 41 U.S.C. 254b)* WIH certified (and

recertified during each Purchase Order), that it would comply with standard cost pricing audit and accounting standards as delineated by 48 CFR Chapter 99, and that it will truthfully disclose the costs associated with the services to be provided to Northrop Grumman. See Exhibit D, Pages 2-16 (as numbered by filed pdf exhibit not document pages).

37. Under The Northrop Grumman Master Contract, WIH agreed and represented to Northrop Grumman Corporation that WINCHESTER would be securing a profit not to exceed 15% (See Exhibit D, page 17).

38. In order for the 15% profit to be ascertained, accurate and truthful costing data must be submitted. This 15% margin was achieved with a 5% commission mark-up and false and super-inflated minute-time for assembly, inspection, wiring firing, x-ray, soldering, welding, and masking. (See Exhibit D, page 17).

39. Relator has personal information that the 5% commission was never paid.

40. Relator has personal information that the costs projections for labor time needed was super-inflated because the actual profit margins realized by Winchester Interconnect exceeded 60%, which is over

12

350% more than the negotiated price outcome. See Exhibit E which is a surreptitious internal document which shows the actual realized margins as documented internally by WIH, showing the following profit margins:

> PO 4502182013/SO07442 – 74% Gross Profit
> PO 4502312187/CO00952 – 65% Gross Profit
> PO 4502373104/CO01587 – 61% Gross Profit
> PO 4502386985/CO01588 – 60% Gross Profit
> PO 4502395130/CO01791 – 61% Gross Profit

(See Exhibit E)

41. Indeed, even if WIH believed the costs to be truthful and accurate at the time in which the costs were certified, once WINCHESTER realized the true costs for the project, WIH had a legal duty to inform Northrop Grumman Corporation of the real costing data so that the Government could be informed, and a new contract price could be renegotiated as provided by law.

42. The 5% false commissions alone caused the United Stated government to overpay $101,467.60 (Based on total sales of $2,029,352 x .05) for the Northrup Grumman afore-stated project.

43. Under the terms outlined by Northrop Grumman Masters Contract, WIH violated the terms and conditions of the contract. The violations

and contractual breaches include failure to abide by the following laws, rules and regulations:

   a.  48 CFR § 52.222-41

   b.  48 CFR § 52.214-26 – 28

   c.  48 CFR § 52.215-10-13

   d.  48 CFR § 52.215-20

   e.  10 U.S.C. § 2306, et al.

44. Further, in addition to the false, imaginary and fabricated commissions, WIH misrepresented costs which resulted in the following damages to the United States as follows:

   a.  Costs which WIH represented it would incur: $1,724,950

   b.  Costs which WIH actually incurred: $695,155

   c.  The fraudulent over-inflated amount under the afore-stated NGC contract is: $1,029,795.00.

   d.  The above costs are based using the maximum 15% margin. However, the type of contract calls for a 10% maximum margin, as such the actual damages, are in fact higher.

45. Pursuant to the over-inflated false costs, the United States government was ripped off, at a minimum, the sum of $1,029,795.00.

46. The misrepresentations related to the loss to taxpayers in the sum of $1,029,795 is a legal material sum which the United States, on behalf of tax payers, should be returned to the United States.

47. WIH, through its management, knew that it was misrepresenting the true costs of the relevant parts.

48. WIH intended to induce Northrop Grumman Corporation to report false costing data to the United States government so that WIH could illegally profit exorbitantly.

49. That the United States Department of Defense reasonably and justifiably relied upon the misrepresentations and suffered damage as a result, including payment of false claims by U.S.

50. WIH is a wholly owned subsidiary to WINCHESTER who profited from the false WIH data that WIH submitted. As a result, WINCHESTER is jointly and severally liable for the harms it has caused to the United States.

51. As a result of the fraud committed by WIH, Northrop Grumman Corporation received the fraudulent monies from the United States, and in turn, paid WIH.  As a result, WIH illegally profited from the

false representations. Indeed, WIH's false statements ultimately led the government to pay amounts it did not owe.

## VII.   The Lockheed Martin Contracts

52. Relator, as an inside sales manager for WIH knew of a specific Lockheed Martin Contracts where WIH was a single-source subcontractor. Relator identifies the contract as part of the PAC-3 missile contract, under Q x 3000112506 received on January 11, 2016, and which procured the following part numbers:

    a.  PN13603963-1

    b.  PN13603963-2

    c.  PN13603964-1

    d.  PN13603964-2

    e.  PN13604334 (aka PN13604011)

53. The contract referenced in this Count was a multi-year buy contract.

54. Lockheed Martin Corporation submitted a request for proposal which informed WIH of the single source requirements and informed WIH of the laws and accounting standards which set forth the terms in which WIH could provide supplies to LMC so that the PAC-3 missile contract can be complied with. (See Exhibit F).

55. As part of the RFP, Lockheed Martin Corporation informed WIH that the maximum profit it could realize as a FFP Contract (single source government sub-contractor) was 15% maximum markup and 7% minimum mark-up, with a mid-profit point of 12%. (See Exhibit G, pgs. 111 -125 as number by the pdf exhibit filing).

56. WIH, as part of its delay strategy identified in paragraph 27(g) above, purposefully delayed 8 months before providing the data so that Lockheed Martin Corporation would be under time constraints and accept data which was incomplete and manipulated so as to deceive Lockheed Martin Corporation and the United Stated Government into believing WIH was not making profit in excess of 15%.

57. To show a 15% maximum mark-up, WIH reported false costs by fabricating a false commission and exorbitantly overinflating labor minutes for each part number.

58. Relator, as the inside sales manager, has insider information in that WIH did not pay a commission for the contract and it intentionally and falsely over-inflated what the labor costs would be. The false commission reported as a cost was a 5% commission, when in fact, it was 0%.

59. WIH submitted the contract pricing proposal on March 18, 2016, which summed to $1,070,104.76. (See Exhibit H)

60. The labor time which was falsely reported includes the allocation of time for the following categories of labor:

  a.  Assembly
  b.  Masking
  c.  Firing
  d.  Technicians
  e.  Inspection
  f.   Soldering
  g.  Welding
  h.  Pre-tinning.

61. As an inside sales manager for WIH, Relator had insider information and documentation that, in fact, WIH made between 39% - 88% profit margins. Specifically, Relator has the following information and documentation of the actual margins per part number:

  a.  Part Number 13603963-1 Gross Profit Report, Exhibit I

      i.  Purchase Order 4103917280, in WIH system known as customer order   CO00567 with Gross Profit of 51%.
      ii. Purchase Order 4104351612, CO01952 with Gross Profit of 57%.

  b.  Part Number 13603963-2 Gross Profit Report, Exhibit J.

      i.  Purchase Order 4103908639, in Defendant WIC's system

as customer order CO00594 with Gross Profit 50%

    ii. Purchase Order 4104017248, in Defendant WIC's system as customer order CO00900 Gross of Profit 57%

    iii. Purchase Order 4104351612, in Defendant WIC's system as customer order CO01952 with gross Profit 61%

    iv. Purchase Order 4103081667, in Defendant WIC's system as sales order SO- 07043 with Gross Profit of 60%

    v. Purchase Order 4103510990, in Defendant WIC's system as sales order SO- 07576 with Gross Profit of 63%.

c. Part Number 13604334/13604011 Gross Profit Report,

Exhibit K & L

    i. Purchase Order 4104039188, in Defendant WIC's system as customer order CO00914 with Gross Profit of 77%.

    ii. Purchase Order 4104321956, in Defendant WIC's  system as customer order CO01789 with Gross Profit of 72%.

    iii. Purchase Order 4103580938, in  Defendant WIC's system as sales order SO- 07597 with Gross Profit of 88%.

d. Part Number 13603964-1 Gross Profit Report, Exhibit M

    i. Purchase Order 4103908639, in Defendant WIC's system as customer order  CO00594 with Gross Profit of 47%.

    ii. Purchase Order 4104017248, in Defendant WIC's  system as customer order  CO00900 with Gross Profit 39%

    iii. Purchase Order 4104351612, in  Defendant WIC's system as customer order CO01952 Gross Profit of 52%

    iv. Purchase Order 4103133478, in Defendant WIC's system as sales order SO- 07111 with Gross Profit of 58%.

e. Part Number 13603964-2 Gross Profit Report, Exhibit N

    i. Purchase Order 4104321956, in Defendant WIC's system as customer order CO01789 with Gross Profit of 50%.

    ii. Purchase Order 4104351612, in Defendant WIC's system as customer order CO01952 with Gross Profit 57%

iii.  Purchase Order 4103510990, in Defendant WIC's system as sales order  SO-07576 with Gross Profit of 58%.

62. Under the terms outlined by Lockheed Martin Master Contract, WIH violated the terms and conditions which Lockheed Martin Corporation established for WIH, and in turn, violated the terms of the Lockheed Martin Master Contract. The violations and contractual breaches include failure to abide by the following laws, rules and regulations:

a.  48 CFR § 52.222-41

b.  48 CFR § 52.214-26 – 28

c.  48 CFR § 52.215-10-13

d.  48 CFR § 52.215-20

e.  10 U.S.C. § 2306, et al.

63. The damages to the United States government are as follows:

a.  For PN 13603964-2, total sales were $985,399. The actual WIH profit margin was 62.3% which realized a profit of $614,949. The profit that should have been realized using the 12% quoted representation of WIH is $118,247.88, which results in a fraud of $496,701.12 for this part. (See Exhibit O).

b. For PN 13603964-1, total sales were $546,491. The actual WIH profit was 65.3% which realized a profit of $357,112. The profit that should have been realized using the 12% quoted representation of WIH is $65,578.92, which results in a fraud to the United States of $291,533.08 for this part number. (See Exhibit P).

c. For PN 13604011/13604334, -1, total sales were $508,301. The actual WIH profit was 78.6% which realized a profit of $399,910. The profit that should have been realized using the 12% quoted representation of WIH is $60,996.12 which results in a fraud to the United States of $338,913.88 (See Exhibit Q).

d. For PN 13603963-2, total sales were $2,110,557. The actual WIH profit was 70.6% which realized a profit of $1,490,287. The profit that should have been realized using the 12% quoted representation of WIH is $253,266.84 which results in a fraud to the United States of $1,237,020.16. (See Exhibit R)

e. For PN 13603963-1, total sales were $401,623. The actual WIH profit was 71.5% which realized a profit of $287,509. The profit that should have been realized using the 12% quoted

representation of WIH is $48,194.76 which results in a fraud to the United States of $239,314.29 (See Exhibit S).

    f.  Damages may be higher if Court finds that a mark-up of 10% should have been used instead of the 15% mark-up.

64. In sum, as a result of the fraud and swindling by WIH, the total sum that Relator has been able to identify, at a minimum, is a total fraud of $2,603,482.48 just for the Lockheed missile PAC-3 program.

65. As a result of WIH's false statements, the government was caused to pay amounts it did not owe.

## COUNT I:
## CAUSE OF ACTION AGAINST WINCHESTER FOR FALSE CLAIMS VIOLATION OF 31 U.S.C. § 3729(a)(1)(A) UNDER THE NORTHRUP GRUMMAN CONTRACTS

66. Relator alleges and incorporates by reference 1 through 51 above.

67. As set forth above, WINCHESTER knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C § 3729(a)(1)(A).

68. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover

treble damages and civil penalties for each false claim as provided by 31 U.S.C § 3729.

69. Relators are entitled to reasonable attorneys' fees and costs as provided by 31 U.S.C § 3730(d)(1).

In amending the FCA in 1986, Congress emphasized that the scope of false or fraudulent claims should be broadly construed:

> *(E)ach and every claim submitted under a contract... which was originallyobtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim.*

**WHEREFORE, P**laintiff-Relator prays for judgment against all defendants:

(1) That this Court enter judgment against Defendants WIH and WIC in an amount equal to three times the amount of damages U.S. has sustained because of Defendants' false claims, plus a civil penalty of not less than $5,000 and not more than $10,000 for each purchase order violation pursuant to 31 U.S.C. § 3729(a)(1)(g).

(2) That Plaintiff be awarded the maximum pursuant to § 3730 of the False Claims Act including $1,029,795 for the Northrup Grumman afore-referenced contract against Defendants WIH and WIC.

(3) That Plaintiff and Relator be awarded all costs of this action

including attorneys' fees and expenses against Defendants WIH and WIC;

(4) That Relator be awarded 30% of all monies found to be due and owing to Plaintiff; and

(5) That the United States and Plaintiff and Relator recover such other relief as the Court deems just and proper against Defendants WIH and Winchester Interconnect.

**COUNT II:**
**CAUSE OF ACTION AGAINST WINCHESTER FOR FALSE CLAIMS VIOLATION OF 31 U.S.C. § 3729(a)(1)(B) UNDER THE NORTHRUP GRUMMAN CONTRACTS**

70. Relator alleges and incorporates by reference 1 through 51.

71. As set forth above, WINCHESTER knowingly presented or caused to be presented false or fraudulent records or statements in violation of FCA, 31 U.S.C. § 3730(d)(1) claims for payment or approval, in violation of 31 U.S.C § 3729(a)(1)(B).

72. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover

treble damages and civil penalties for each false claim as provided by 31 U.S.C § 3729.

73. As a result of the contractual violations, the Government is entitled to get back 100% of all the profit which WIH illegally generated. The total sum of profit which WIH generated was, at a minimum, $1,525,161.

**WHEREFORE,** plaintiff prays for judgment against all defendants:

(1)    That this Court enter judgment against Defendants WIH, and Winchester Interconnect   in an amount equal to three times the amount of damages U.S. has sustained because of Defendants' false claims, plus a civil penalty of not less than $5,000 and not more than $10,000 for each purchase order violation pursuant to 31 U.S.C. § 3729(a)(1)(g).

(2)    That Plaintiff be awarded the maximum pursuant to §3730 of the False Claims Act including $1,525,161 for the Northrup Grumman afore-referenced contract against Defendants WIH and Winchester Interconnect.

(3)    That Plaintiff and Relator be awarded all costs of this action including attorneys' fees and expenses against Defendants WIH and

WIC;

(4)     That Relator be awarded 30% of all monies found to be due and

owing to Plaintiff; and

(5)     That the United States and Plaintiff and Relator recover such

other relief as the Court deems just and proper against Defendants

WIH and WIC.

## COUNT III:
## FALSE CLAIMS: CAUSE OF ACTION AGAINST WINCHESTER FOR
## FALSE CLAIMS VIOLATION OF 31 U.S.C. § 3729(a)(1)(B) UNDER THE
## LOCKHEED MARTIN CONTRACT

74. Plaintiff alleges and incorporates by reference 1  through 32 and 52

through 65 above.

75. As set forth above, WINCHESTER knowingly presented or caused to

be presented false or fraudulent claims for payment or approval, in

violation of 31 U.S.C § 3729(a)(1)(A).

76. Due to Defendant's conduct, the United States Government has

suffered substantial monetary damages and is entitled to recover

treble damages and civil penalties for each false claim as provided by

31 U.S.C § 3729.

77. Relators are entitled to reasonable attorneys' fees and costs as provided by 31 U.S.C § 3730(d)(1).

78. As a result of the contractual violations, the Government is entitled to get back 100% of all the profit which WIH illegally generated from the Lockheed Martin Master Contract. The total sum of profit which WIH generated was $ 3,149,767.

**WHEREFORE,** plaintiff prays for judgment against all defendants:

(1)    That this Court enter judgment against Defendants WIH and WIC in an amount equal to three times the amount of damages U.S. has sustained because of Defendants' false claims, plus a civil penalty of not less than $5,000 and not more than $10,000 for each purchase order violation pursuant to 31 U.S.C. § 3729(a)(1)(g).

(2)    That Plaintiff be awarded the maximum pursuant to§ 3730 of the False Claims Act including $3,149,767 for the profit which WIH generated from the Lockheed Martin Contract.

(3)    That Plaintiff be awarded all costs of this action including attorneys' fees and expenses; and

(4)    That the United States and Plaintiff-Relator recover such other

relief as the Court deems just and proper.

## COUNT IV:
## CAUSE OF ACTION AGAINST WINCHESTER FOR FALSE CLAIMS VIOLATION OF 31 U.S.C. § 3729(a)(1)(B) UNDER THE LOCKHEED MARTIN CONTRACTS

79. Relator alleges and incorporates by reference 1 through 32 and 52 through 65.

80. As set forth above, WINCHESTER knowingly presented or caused to be presented false or fraudulent records or statements in violation of FCA, 31 U.S.C. § 3730(d)(1) claims for payment or approval, in violation of 31 U.S.C § 3729(a)(1)(B).

81. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and civil penalties for each false claim as provided by 31 U.S.C § 3729.

82. As a result of the violations, the Government is entitled to get back 100% of all the profit which WIH illegally generated. The total sum of profit which WIH generated was, at a minimum, $1,525,161.

**WHEREFORE,** Plaintiff and Relator prays for judgment against all WINCHESTER as follows:

(1)    That this Court enter judgment against Defendants WIH and WIC in an amount equal to three times the amount of damages U.S. has sustained because of Defendants' false claims, plus a civil penalty of not less than $5,000 and not more than $10,000 for each purchase order violation pursuant to 31 U.S.C. § 3729(a)(1)(g).

(2)    That Plaintiff be awarded the maximum pursuant to §3730 of the False Claims Act including $2,603,482.48 for the Lockheed Martin Contract.

(3)    That Plaintiff and Relator be awarded all costs of this action including attorneys' fees and expenses; and

(4)    That the United States, Plaintiff and Relator recover such other relief as the Court deems just and proper; and

(5)    That Relator be awarded 30% of all monies found to be due and owing to Plaintiff.

Dated: June 2, 2022.

*/s/ Maurice Arcadier, Esquire*
Maurice Arcadier, Esquire
Florida Bar No. 0131180

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the original of the foregoing was filed with the

Clerk of Court on this 2nd day of June 2022 by using the CM/ECF system

which will electronically serve on all parties of record.

ARCADIER, BIGGIE & WOOD, PLLC

*/s/ Maurice Arcadier, Esquire*
Maurice Arcadier, Esquire
Florida Bar No. 0131180
Joseph C. Wood, Esq
Florida Bar No.: 0093839
Primary Email: Office@ABWlegal.com
Secondary Email: Arcadier@ABWlegal.com
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Phone: (321) 953-5998
Fax: (321) 953-6075